**YANNI LAW, APC**
John C. Bohren (California State Bar No. 295292)
145 S Spring St; #850
Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779

**POULIN | WILLEY | ANASTOPOULO, LLC**
Andre Bèlanger (*Pro Hac Vice Forthcoming*)
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIVIAN MAKAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v<br><br>THRASIO, LLC.<br><br>Defendant | **Case No:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

**CLASS ACTION COMPLAINT**

Plaintiff Vivian Makar ("Plaintiff") brings this Class Action Complaint against Defendant Thrasio, LLC ("Thrasio" or "Defendant") as an individual and on behalf of all others

similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff Vivian Makar is a resident citizen of Trabuco Canyon, California. Plaintiff is a purchaser of Thrasio's Angry Orange Enzyme Stain Remover.

2. Defendant, Thrasio, LLC., is incorporated in Delaware with its principal place of business in Walpole Massachusetts. The Defendant's Registered Agent for Service of Process is CT Corporation. CT Corporation has an office in Boston, Massachusetts.

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

4. This Court has personal jurisdiction over Defendants under 28 USCS § 1391 because Defendants conduct substantial business in the United States and California, including the manufacture, marketing, distribution, and sale of products that are the subject of this action.

5. Venue is proper under 28 U.S.C §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the distribution and sale of the Recalled Products and Defendant has sufficient contacts with this District such that the exercise of jurisdiction is reasonable and just.

## FACTUAL ALLEGATIONS

6. On January 22, 2026, Thrasio announced a recall of its Angry Orange Enzyme Stain Remover, hereafter ("Angry Orange" or "Recalled Product(s)") after the discovery of dangerous bacteria, including *Pseudomonas aeruginosa.*[1]

7. According to public news reports, the Defendant is recalling approximately 1.5 million bottles of their Angry Orange Enzyme Stain Remover products because of this bacterial contamination hazard.[2]

8. The contaminated products were believed to have been produced between March of 2019 and December of 2025.[3]

9. According to the Recall Notice, the recall involves Angry Orange Enzyme Stain Removers in Fresh Clean Scent and Orange Twist Scent sold in 24-oz, 32-oz and 1-gallon sizes. The bottles are orange and white and have "Angry Orange" and "Stain & Odor Remover" written on the front.[4] Some units were sold as a bundle with a UV light that attaches to the spray bottle.[5]

10. The Products were sold at Walmart, Target, The Home Depot, Meijer, Staples, TJ Maxx and other major retailers nationwide and online at Amazon.com, Walmart.com, Target.com, AngryOrange.com and Chewy.com for between $4 and $60.[6]

11. The Defendant's website claims that "Keeping your children and pets safe is our priority. Unlike other home cleaning products, our Angry Orange cold-pressed formula is

---

[1] https://www.cpsc.gov/Recalls/2026/Thrasio-Recalls-Angry-Orange-Enzyme-Stain-Removers-Due-to-Risk-of-Exposure-to-Bacteria

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

chemical-free. We want you to have peace of mind knowing our products are safe to use around your home." [7]

12. However, Defendant's Product is not safe. It contains dangerous bacteria such that people with weakened immune systems, external medical devices, or underlying lung conditions who are exposed to *Pseudomonas aeruginosa* face a risk of serious infection that may require medical treatment.[8]

13. This bacteria can enter the body if inhaled, through the eyes, or through a break in the skin.[9]

14. The CPSC expressed that Consumers should immediately stop using the recalled Angry Orange Enzyme Stain Remover products and contact Thrasio for a full refund. To receive a refund, consumers should take a picture of the product with "recalled" and their initials written on it in marker and email the photo to productrecall@angryorange.com. [10]

15. Plaintiff is a resident and citizen of California who has a history of purchasing Angry Orange Enzyme Stain Remover.

16. Plaintiff was advised of the recall through Amazon where she last purchased the Recalled Product.

17. Plaintiff did not experience any symptoms associated with *Pseudomonas aeruginosa*, but nevertheless was forced to purchase, store, and potentially ingest a product that has now been declared unsafe and unfit for household use. The product Plaintiff purchased, like all Recalled Products, either contained or was at risk of containing harmful bacteria.

---

[7] https://angryorange.com/pages/about-us

[8] https://www.cpsc.gov/Recalls/2026/Thrasio-Recalls-Angry-Orange-Enzyme-Stain-Removers-Due-to-Risk-of-Exposure-to-Bacteria

[9] *Id.*

[10] *Id.*

18. The exposure was not limited to herself but also included her husband and pets.

19. Upon learning of the recall, Plaintiff has spent time attempting to remediate the stained areas treated with the defect product but is fearful that mixing other chemicals into he contaminated areas could cause an adverse chemical reaction.

20. As a result of Defendant's conduct, Plaintiff and the Putative Class Members suffered economic loss, including but not limited to the purchase price of the recalled products, and have been deprived of the benefit of their bargain. No consumer would purchase the products knowing they contained or were at risk of containing harmful bacteria that one ordinarily should not be exposed to.

21. The contamination of the recalled products was sufficiently widespread as to possibly affect any given unit of the recalled products, including the product purchased by Plaintiff.

22. Given the scale of the recall and the inherent impossibility for an individual consumer to determine whether their particular product was contaminated, every unit subject to recall, including Plaintiff's purchase, was plausibly affected by the defect.

23. As a result, the economic benefit Plaintiff and Class Members received was less than the price they paid for the recalled products. Plaintiff and Class Members purchased household products that were represented as safe. Instead, they received adulterated, unsafe, and worthless products that should be discarded, offering no value or benefit relative to their purchase price. And, indeed, exposed them to health risks.

24. Plaintiff and Class Members suffered economic loss because they paid for products that had no value, resulting in a total failure of consideration and loss of the benefit of the bargain.

25. Defendant failed to adequately design, manufacture, test, inspect, and monitor the production process of the recalled products, allowing contaminated products to enter the stream of commerce on a massive scale.

26. Defendant also failed to warn consumers in a timely and adequate manner, instead allowing adulterated products to remain on shelves and in consumer homes for months before a recall was announced.

27. Defendant's recall, standing alone, is an insufficient remedy.

28. Defendants refund offer is inadequate for many, if not most class members. Defendant is aware that most consumers purchase the products at multiple locations and do not maintain receipts. As such, most consumers cannot receive refunds at the location of purchase.

29. Also, many consumers and Class Members have already used the Product.

30. The Product's use negates any meaningful remedy that is offered by the refund as it still exposes consumers, their guests and pets to the exposure of a harmful and unsafe bacteria. Furthermore, the refund remedy fails to compensate consumers who are now required to purchase additional cleaning agents and supplies and re-clean the impacted areas of their homes in an effort to mitigate potential exposure. Neither this expense, time nor effort are addressed by the recall remedy.

31. Additionally notice of the recall was not specifically targeted to reach customers of the products. Unlike class notice (which is designed to reach the majority of class members), Defendant has not conducted a widespread advertising campaign or provided direct notice to known purchasers.

**CLASS ACTION ALLEGATIONS**

32. Plaintiff brings this action on behalf of herself and as a class action for all others

similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class is defined as follows:

**All persons within the United States who purchased the Recalled Products that were subject to the January 22, 2026, recall.**

33. This Nationwide Class shall be referred to herein as the "Class."

34. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

35. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

36. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendants or its affiliates and agents and from major retail sellers.

37. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38. The proposed Class is so numerous that the joinder of all members is impracticable.

39. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

40. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class

is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown currently, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Nevertheless, the numerosity of the class is such that it is capable of purchasing 1,500,000 units of the Recalled Products.

41. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

42. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a contaminated Recalled Product posing a health hazard. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiff.

43. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and

expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

44. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described. Unless a Class is certified, Defendants will be allowed to profit from their unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendants may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

45. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant manufactured, marketed, and sold Products that were contaminated with bacteria, specifically *Pseudomonas aeruginosa*;

b. Whether the Recalled Products were manufactured defectively or otherwise

unreasonably dangerous for their intended use;

c. Whether Defendant knew or should have known of the risk of contamination in their Products;

d. Whether Defendant failed to exercise reasonable care in the design, manufacturing, testing, marketing, and distribution of the recalled products;

e. Whether Defendant violated federal or state consumer protection statutes by distributing adulterated or contaminated products into interstate commerce;

f. Whether Defendant's acts and omissions constitute breaches of express and/or implied warranties;

g. Whether Defendant was unjustly enriched by the sale of the Recalled Products;

h. Whether Plaintiff and Class Members are entitled to damages, restitution, disgorgement, or other relief;

i. Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief, including enhanced safety testing, consumer warnings, and recall remedies; and.

j. The appropriate measure of damages or restitution owed to Plaintiff and Class Members.

## CAUSES OF ACTION

## COUNT I

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

46. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

47. Cal Civ. Code 179.1 establishes an implied warranty of merchantability and fitness.

48. The implied warranty of merchantability requires products to be fit for the ordinary purpose for which the goods are used.

49. Implied warranty of fitness means (1) that when the retailer, distributor, or manufacturer has reason to know any particular purpose for which the consumer goods are

required, and further, that the buyer is relying on the skill and judgment of the seller to select and furnish suitable goods, then there is an implied warranty that the goods shall be fit for such purpose.

50. In this case, the Defendant had reason to believe, by the nature of the product and the Defendant's marketing activities, that the Recalled Products' purpose was as a solution fit for safe household use. Plaintiff, and Class Members could reasonably rely upon the Product's packaging and public website to believe they were purchasing a safe product for stain removal and other related use. Having the Product contaminated with a harmful bacterium renders the Product unsafe for household use and unsuitable.

51. As stated elsewhere within this complaint, according to the CPSC Recall, the Products were contaminated with *Pseudomonas aeruginosa* and defective at the time of sale.

52. Defendants are merchants and were at all relevant times involved in the distributing, warranting, and/or selling of the contaminated Recalled Products.

53. The Recalled Products are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the Recalled Products, as goods, were purchased.

54. Defendant entered into agreements with consumers to sell the Recalled Products to Plaintiff and Class Members for safe household use.

55. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

56. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendants' warranties and sales. Defendants' warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

57. Defendants have sufficient notice of their breaches of implied warranties associated with the recalled products through their review of consumer complaints and/or their own recall.

58. Had Plaintiff, Class Members, known about this defect, they would have not purchased them and, instead, would have purchased a similar product from a competitor or they would have paid less.

59. As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

60. Plaintiff suffered injury in that he purchased a product that is not fit for household or similar use due to an unreasonably high probability of contamination with *Pseudomonas aeruginosa*.

61. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

**COUNT II**

**UNJUST ENRICHMENT**

62. Plaintiff incorporates the allegations set forth in the previous aforementioned paragraphs as though set forth fully herein.

63. Plaintiff pleads the equitable remedy of "unjust enrichment" or "restitution" as an alternative remedy should the Court deem there was no contract between the Plaintiff and Defendant. See *Sepanossian v. National Ready Mix Co*., 97 Cal. App. 5th 192 (Cal. 2nd. 2023).

64. Defendant should not be able to retain monies received for selling Plaintiff and Class Members Products in which there is an unreasonably high risk of bacterial contamination.

65. Plaintiff, and the other members of the Class, conferred a monetary benefit upon Defendants by purchasing the potentially contaminated Recalled Products. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe.

66. The Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and the contaminated Products without adequate warnings of the known contamination.

67. The benefit was obtained unlawfully by Defendant distributing products not fit for human use. Retaining these profits without disclosing the defect or contamination or refunding consumers is unjust and inequitable.

68. Defendant received revenues from the sales of these contaminated products at the expense of Plaintiff and the Class, who would not have purchased the Recalled Products had they been aware of risk of contamination.

69. Defendant has been unjustly enriched by retaining the revenues derived from the sales of the potentially contaminated products. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with its products, thereby misleading consumers and endangering their safety.

70. Plaintiff and the members of the Class seek restitution of the monies conferred upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge the profits obtained from the sale of potentially contaminated products and provide restitution to Plaintiffs and the Class, as ordered by the Court.

71. Only through litigating this matter as a class action lawsuit will the impacted consumers be given sufficient notice to present their claims for relief.

## DEMAND OF TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Respectfully submitted,

By: *<u>/s/ John C. Bohren</u>*

**YANNI LAW APC**
John C. Bohren (California State Bar No. 298476)
145 S Spring St; #850 Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779
Email:Yanni@bohrenlaw.com

AND

Andre R. Belanger (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: andre.belanger@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and the Class*